UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO SOTO,

       Plaintiff,

vs.                                            Case No. 11-14064

WELLS FARGO BANK, N.A.,               HON. AVERN COHN

       Defendant.
_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY
## JUDGMENT (Doc. 3)
## AND DISMISSING CASE[1]

I.  Introduction

This is another of one of many cases pending in this district involving a default on

a mortgage and eventual foreclosure.  Plaintiff Antonio Soto is suing defendant Wells

Fargo Bank, N.A. (Wells Fargo) making several claims relating to his mortgage and

subsequent foreclosure proceedings on his residence.  The complaint alleges twelve

counts, phrased as follows:

      Count 1 - Forged And Invalid Assignment, No Proof of Ownership of Loan/
      Authority to Foreclose

      Count 2 - Michigan Mortgage Brokers, Lenders And Servicers Act

      Count 3 - Declaratory Relief, Failure Of Condition Precedent, Code Of Federal
      Regulations

      Count 4 - Declaratory Relief, Foreclosure Barred By Unclean Hands

---

[1]Although originally scheduled for hearing, the Court deems this matter
appropriate for decision without oral argument.  See Fed. R. Civ. P. 78(b); E.D. Mich.
LR 7.1(f)(2).

Count 5 - Breach Of Contract, Implied Duty Of Good Faith And Fair Dealing

Count 6 - Federal Fair Debt Collection Practices Act

Count 7 - Michigan Fair Debt Collection Practices Act

Count 8 - Intentional Fraud

Count 9 - Constructive Fraud

Count 10 - Promissory Estoppel

Count 11 - Michigan Consumer Protection Act

Count 12 - Unjust Enrichment

Before the Court is Wells Fargo's motion to dismiss under Fed. R. Civ. P. 12(b)(6) and/or motion for summary judgment under Fed. R. Civ. P.  56(c).[2]  For the reasons that follow, the motion will be granted.

## II.  Background

On June 5, 2008, plaintiff received a $67,450 residential mortgage loan from Ross Mortgage Corporation to purchase property in Redford, Michigan.  As security for repayment of the Loan, plaintiff executed a mortgage, which encumbered the property. On June 20, 2008, the Mortgage was recorded with the Wayne County Register of Deeds in Liber 47305, Page 727-733.

The Mortgage named Ross Mortgage Corporation as the "Lender."  The mortgage also stated that it was given to Mortgage Electronic Registration Systems, Inc. ("MERS") as the "nominee for Lender."  The Mortgage further states that it "secures to

---

[2]Although Wells Fargo has moved to dismiss and for summary judgment, the motion is granted under Rule 12(b)(6).  As will be explained, resolution of the motion requires the Court to look only to the complaint and documents referenced in the pleadings which are central to plaintiff's claims, including public documents.

2

Lender: (a) the repayment of the debt evidenced by the Note." The mortgage further

granted MERS the power of sale of the property in the event of Plaintiff's default.

Moreover, in the mortgage, plaintiff expressly acknowledged that:

> Borrower understands and agrees that MERS holds only legal title to the
> interests granted by Borrower in this Security Instrument, but, if necessary to
> comply with law or custom, MERS (as nominee for Lender and Lender's
> successors and assigns) has the right to exercise any or all of those interests,
> including, but not limited to, the right to foreclose and sell the Property, and to
> take any action required of Lender including, but not limited to releasing or
> canceling this Security Instrument.

On May 31, 2011, MERS assigned the mortgage to Wells Fargo. On June 2,

2011, the assignment was recorded with the Wayne County Register of Deeds in Liber

49214, Page 18-19.

Plaintiff defaulted on the Loan, after which Wells Fargo initiated foreclosure

proceedings.

On September 6, 2011, plaintiff filed a complaint in state court challenging the

validity of the foreclosure proceedings, asserting the twelve claims set forth above.

Plaintiff also alleges Wells Fargo has wrongfully denied him a loan modification. The

state court issued a temporary restraining order halting the foreclosure process. Wells

Fargo removed the case to federal court on September 19, 2011, the day before a

scheduled preliminary injunction hearing in state court.

### III. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests

the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the

complaint's "factual allegations must be enough to raise a right to relief above the

speculative level on the assumption that all of the allegations in the complaint are true."

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).  See also Ass'n of Cleveland
Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir.2007). The court is
"not bound to accept as true a legal conclusion couched as a factual allegation."
Aschcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (internal quotation marks and
citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief
survives a motion to dismiss."  Id.  Thus, "a court considering a motion to dismiss can
choose to begin by identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth.  While legal conclusions can
provide the framework of a complaint, they must be supported by factual allegations.
When there are well-pleaded factual allegations, a court should assume their veracity
and then determine whether they plausibly give rise to an entitlement to relief."  Id.  In
sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to state a claim for relief that is plausible on its face." Id. at 1949
(internal quotation marks and citation omitted).

        In ruling on a motion to dismiss, the Court may consider the complaint as well as
(1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of
which a court may properly take notice, (3) public documents, and (4) letter decisions of
government agencies may be appended to a motion to dismiss.  Tellabs, Inc. v. Makor
Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007).  Here, the Court has
considered documents relating to the mortgage and the foreclosure which are
referenced in the complaint and central to plaintiff's claims.

                                    IV.  Analysis

        Each count of the complaint is addressed in turn below.

                                         4

A.  Count 1 - Forged and Invalid Assignment

While plaintiff asserts a myriad of claims, his primary contention is that assignment of the mortgage was defective because it was made by MERS instead of Ross Mortgage Corporation.  This is essentially the basis for Count 1.  This Count must be dismissed for several reasons, discussed below.

M.C.L. 600.3204(3) provides:

> If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage.

Section 3204(3) does not apply because there has yet to be a sheriff's sale of the property.  However, assuming this section applies, it was satisfied because a record chain of title exists showing the transfer of the mortgage from MERS, as nominee of Ross Mortgage, to Wells Fargo.

To the extent that plaintiff relies upon the Michigan Court of Appeals' decisions in Residential Funding Co, LLC f/k/a Residential Funding Co. v. Saurman, and Bank of New York Trust Company v. Messner, such reliance is misplaced.  First, the "sole question presented" in Saurman was "whether MERS is an entity that qualifies under M.C.L. 600.3204(1)(d) to foreclose by advertisement."  While the court of appeals held that MERS did not qualify to foreclose by advertisement because it was without a legal or equitable ownership right in the debt secured by the mortgage in question, in this case MERS did not foreclose on the mortgage, nor can it since it assigned the mortgage to Wells Fargo.  Moreover, since the filing of the complaint, the Michigan Supreme Court reversed the court of appeals' decision in Saurman and held that MERS has the statutory authority to foreclose.  Residential Funding Co., LLC v. Saurman, __ Mich.

5

___, 2011 WL 5588929 (Mich. Nov. 16, 2011).  Thus, to the extent plaintiff argues that the foreclosure proceedings are invalid based on MERS's role in the mortgage process, his claim fails.  The record shows that Wells Fargo took an assignment of the mortgage as well as the debt secured by the mortgage and is authorized under M.C.L. 600.3204(1) to foreclose the mortgage by advertisement. There is no material procedural irregularity in the mortgage foreclosure proceedings.

This conclusion is confirmed by the court of appeals' decision in Bakri v. Mortgage Electronic Registration System, 2011 WL 3476818 (Aug. 9, 2011).  In Bakri, the plaintiff challenged the validity of his mortgage foreclosure by claiming that MERS's assignment of the mortgage to Bank of New York Mellon was null and void because MERS  was not the lender.  The court of appeals rejected this argument, noting that the mortgage gave MERS the power to assign it.  Thus, plaintiff's allegation that "in order for Wells Fargo to have a proper chain of ownership of the Mortgage and Note, Wells Fargo would have to show a valid Assignment from Ross to Wells Fargo," complaint at ¶ 43, is mistaken.  Under M.C.L. 600.3204(3), MERS assigned the mortgage to Wells Fargo and Wells Fargo started the foreclosure.  Just as in Bakri, plaintiff expressly authorized this assignment with language in the mortgage.  Thus, there is no dispute that Wells Fargo complied with § 3204(3).

In response, plaintiff contends that Count 1 should go forward because the assignment from MERS to Wells Fargo was forged, contending also that discovery is necessary on this point.  This argument is not persuasive.  First, the record shows that MERS appointed Nicholas Wolf as a signing officer to assign the mortgage and bind MERS.  The assignment predates the foreclosure.  Second, plaintiff offers no facts that

2:11-cv-14064-AC-RSW   Doc # 6   Filed 01/13/12   Pg 7 of 18   Pg ID 202

the assignment was forged.  Bare allegations and rhetoric are insufficient to state a plausible claim for relief.

Finally, plaintiff also appears to argue that the validity of the note is in question because it was endorsed in blank, not witnesses or notarized or dated, and there is no proof that Ross Mortgage signed the endorsement.  This "strawman" argument is misguided.  None of these omissions are required under M.C.L. § 440.3203-3205 for an endorsement to be valid.  Section 3204(d)(1) is satisfied because the note was endorsed in blank and delivered to Wells Fargo.  Under the Michigan law governing the transfer of promissory notes, if an endorsement on a note is made by the holder of the instrument and it is not a special endorsement, it is deemed a "blank endorsement." See MI Jur. Negot. Inst. § 37 Blank Endorsement.  When a promissory note is endorsed in blank, it becomes payable to the bearer, and it may be negotiated by transfer of possession alone until the note is specially endorsed.  See M.C.L. § 440.3205(2);[3] Ensign v. Fogg, 177 Mich. 317, 324 (1913) (the indorsement of the note in blank made it negotiable by delivery).  Wells Fargo is under no obligation to show that anyone at Ross Mortgage signed the note.  Again, simply pleading that the note is a forgery or otherwise irregular is not sufficient.

Overall, Count 1, which challenges the assignment to MERS as well as the state of the chain of title, must be dismissed.  Plaintiff has not sufficiently alleged any irregularities in the mortgage process or Wells Fargo's role in the foreclosure

---

[3]M.C.L. § 440.3205(2) provides:  "If an endorsement is made by the holder of an instrument and it is not a special endorsement, it is a "blank endorsement". When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed."

proceedings.

    B.  Count 2 - Violation of Michigan Brokers Lenders and Servicers Licensing Act.

Wells Fargo says this claim fails because it is exempt from the operation of the Michigan Brokers Lenders and Servicers Licensing Act (MBLSLA).  The Court agrees. Section 445.1675(a) of the MBLSLA states that the Act does not apply to "[a] depository financial institution whether or not the depository financial institution is acting in the capacity of a trustee or fiduciary." A "depository financial institution" includes "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank, or credit union, or an entity of the federally chartered farm credit system." M.C.L. §445.1651a(f).  Wells Fargo is a national banking association chartered under the National Bank Act and it is therefore exempt from the MBLSLA.  As such, Count II must be dismissed.

    C.  Count 3 - Declaratory Relief, Failure Of Condition Precedent, Code Of Federal Regulations

In Count 3, plaintiff contends that because this loan is an FHA loan, Wells Fargo was obligated under 24 C.F.R. § 203.604, as a condition precedent to foreclosure, to meet with plaintiff to resolve any default before the borrower fell three months behind in payments.  Plaintiff also contends that Wells Fargo was required to attempt loss mitigation under HAMP or other mortgage modification "as a condition precedent to foreclosure";

Wells Fargo says this claim fails because plaintiff does not have a private cause of action under 24 C.F.R. § 203.604.  Wells Fargo is correct.  It is well-established that the National Housing Act and attending regulations do not expressly or implicitly create a private right of action to mortgagors for a mortgagee's noncompliance with the Act or

8

regulations.  Federal Nat. Mortg. Ass'n v. LeCrone, 868 F.2d 190, 193 (6th Cir. 1989)

(no express or implied right of action in favor of the mortgagor exists for violation of

HUD mortgage servicing policies); Wells Fargo Bank, N.A. v. Favino, 2011 WL

1256771 (N.D. Ohio Mar. 31, 2011) ("A failure of a mortgagee to adhere to the HUD

servicing requirements in the regulations can be an affirmative defense to foreclosure,

but does not form the basis for a claim.").  Count III must therefore be dismissed.

    D.  Count 4 - Declaratory Relief, Foreclosure Barred By Unclean Hands

    In Count 4, plaintiff contends that Wells Fargo foreclosed his mortgage in bad

faith.  In other words, plaintiff contends that the foreclosure should be stopped because

Wells Fargo as "unclean hands" because of its bad faith in the handling of his loan

modification request.  He also contends that Wells Fargo breached an implied duty of

good faith and fair dealing when it denied his loan modification request.  These claims

fail for at least three reasons.

    First, the "unclean hands" doctrine does not state a cause of action.  Rather, it is

a defense that "depends upon the connection between the complainant's iniquitous acts

and the defendant's conduct which the complainant relies upon as establishing his

cause of action."  Wuliger v. Manufacturers Life Ins. Co., 567 F.3d 787, 797 (6th Cir.

2009).  The doctrine of unclean hands "closes the doors of a court of equity to one

tainted with inequitableness or bad faith relative to the matter in which he seeks relief."

Stachnik v. Winkel, 394 Mich. 375, 382; 230 N.W.2d 529 (1975).  Plaintiff concedes in

his response that the doctrine of unclean hands is more of a defense to the foreclosure

than a claim for relief; however, he has plead the doctrine as a basis for affirmative

relief.  Count 4 must be dismissed.[4]

   E.  Count 5 - Breach Of Contract, Implied Duty Of Good Faith And Fair Dealing

In Count 5, plaintiff alleges that the FHA granted Wells Fargo discretion to determine whether plaintiff qualified for a HAMP or statutory modification and that Wells Fargo breached its implied duty by denying him a loan modification.  However, Michigan law simply "does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing."  Fodale v. Waste Management of Michigan, Inc., 271 Mich. App. 11, 35 (2006) (citing Belle Isle Grill Corp. v. Detroit, 256 Mich. App. 463, 476 (2003)).  Plaintiff says the claim survives, relying on Burkhardt v. City Nat. Bank of Detroit, 57 Mich. App. 649 (1975).  In Burkhadt, the court of appeals concluded that "[w]here a party to a contract makes the manner of its performance a matter of its own discretion [in that case calculating a required escrow balance for property taxes and insurance], the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith."  57 Mich. App at 652.  This concern no longer applies after the enactment of the Real Estate Settlement Procedures Act, 12 U S C. § 2601—2617, in 1974.  This statute governs escrow accounts in residential mortgages.  Further, in Cutrone v. Daimler-Chrysler Motors Co., LLC, 160 F. App'x. 215 (3rd Cir. 2005), the Court of Appeals for the Third Circuit, applying Michigan law, recognized that

---

[4]As Wells Fargo also notes, in Flagstar Bank v. Premier Lending Corporation, 2011 WL 1086558 (Mar. 24, 2011), the Michigan Court of Appeals considered and rejected the borrower's defense that Flagstar acted with unclean hands because it foreclosed mortgages and sold the encumbered properties. The court of appeals recognized that Flagstar foreclosed the mortgages and sold the properties to mitigate its own damages.  As such, the court concluded, Flagstar's mitigation efforts did not establish bad faith or unfairness that would be necessary to invoke the doctrine of unclean hands.

" 'Michigan law does not imply the good faith covenant where parties have unmistakably expressed their respective rights.' " <u>Cutrone</u>, at *3, (citing <u>Hubbard Chevrolet Co. v. Gen. Motors Corp.</u>, 873 F.2d 873, 877 (5th Cir. 1989)).  Here, the mortgage expressly permits foreclosure by advertisement upon default, thus the discretion discussed in <u>Burkhadt</u> does not apply.  Count 5 must be dismissed.

### F.  Count 6 - Federal Fair Debt Collection Practices Act

In Count 6, plaintiff contends that Wells Fargo violated 15 U.S.C. §§ 1692g, the Fair Debt Collection Practices Act (FDCPA).  The FDCPA imposes civil liability on "debt collectors."  Under the FDCPA, a "debt collector" is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another… the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. 1692a(6).  A "debt collector" is not one who attempts to collect its own debt. <u>See Montgomery v. Huntington Bank</u>, 346 F.3d 693, 698-99 (6th Cir. 2003) ("A creditor is not a debt collector for purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts."). <u>See also, Wadlington v. Credit Acceptance Corp.</u>, 76 F.3d 103, 104 (6th Cir. 1996) ("A debt collector does not include the consumer's creditors.").

Here, Wells Fargo is plaintiff's creditor.  As such, Wells Fargo is not a "debt collector" and it is not subject to the FDCPA.  Count 6 must be dismissed.

### G.  Count 7 - Michigan Fair Debt Collection Practices Act

In Count 7, plaintiff alleges that Wells Fargo violated M.C.L. § 339.918, 915(e)

11

and .915(h) of Michigan's Occupational Code (MOC) when it (1) failed to give plaintiff validation of his debt; (2) threatened to initiate legal action and (3) communicated with plaintiff after being notified that he was represented by counsel.

Wells Fargo contends that this claim fails to plead a plausible claim for relief under Twombly. The Court agrees. Applying the Twombly standard to Plaintiff's allegations in Count 7, plaintiff was obligated to plead facts to plausibly demonstrate a violation of the MOC. He has not done so. Rather, the complaint lists boilerplate-type allegations of wrongs but fails to articulate how Wells Fargo violated the act.

Even assuming the complaint properly alleged a cause of action, Count 7 substantively fails because the MOC does not apply to mortgage foreclosures. When resolving claims under the state statutes that nearly mirror the FDCPA, the Courts are guided by the rules and decisions arising under the FDCPA. See Lovelace v. Stephens & Michaels Assocs., 2007 WL 3333019, *2 (E.D. Mich. Nov. 9, 2007) (finding that plaintiff's Regulation of Collections Practices Act claims "simply duplicate his claims under the FDCPA and need not be addressed separately"); Saltzman v. I.C. System, Inc., 2009 WL 3190359, *9 (E.D. Mich. Sep. 30, 2009). Thus, plaintiff's allegations fails on substantive grounds because Wells Fargo's efforts to enforce the mortgage through foreclosure proceedings do not constitute debt collection.

### H.  Counts 8 and 9 - Fraud Claims

In Counts 8 and 9, plaintiff alleges that Wells Fargo committed "intentional fraud" and/or "constructive fraud" when it represented to plaintiff that he would be granted a permanent loan modification if he qualified for the same, if he made all trial period payments on time, and if he refrained from exercising his other rights under the law.

Complaint at ¶ 90.  Plaintiff also alleges that he was fraudulently denied a HAMP or other loan modification.  Id. at ¶¶ 91, 100-101.  These claims fail for several reasons.

To succeed on a claim for fraud, plaintiff must plead and prove that "(1) Defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.'" M & D, Inc. v. McConkey, 231 Mich. App. 22, 27 (1998).

First, Wells Fargo did not make a false representation.  At best, plaintiff's fraud claims concern an alleged broken promise of a future loan modification.  However, "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact." Hi-Way Motor Co. v. Internat'l Harvester Co., 398 Mich. 330, 336 (1976).  "Future promises are contractual and do not constitute fraud." Id. See also, Derderian v. Genesys Health Care Sys., 263 Mich. App. 364, 381 (2004) ("[b]ecause plaintiffs' claims rely on promises of future conduct, summary disposition was appropriate").  Plaintiff's allegation that he was promised a future loan modification simply is not actionable as fraud.

Second, plaintiff's fraud claims, which sound in tort, are precluded by the rule that prevents pursuing a tort remedy when the parties' relationship is governed by a contract.  See, e.g., Sherman v. Sea Ray Boats, Inc., 251 Mich. App. 41, 50 (2002) ("Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the

13

contractual obligation, is established."); <u>Garden City Osteopathic Hosp. v. HBE Corp</u>.,
55 F.3d 1126, 1134 (6th Cir. 1995) ("'Michigan law' is wells settled that an action in tort
requires a breach of duty separate and distinct from a breach of contract.").  Plaintiff has
not pled any duty owed to him by Wells Fargo that is independent from the parties'
contractual relationship found in the note and mortgage.

Third, the fraud claims are subject to dismissal under the statute of frauds.  In
Michigan, certain types of agreements must be in writing before they can be enforced.
<u>Crown Technology Park v. D&N Bank, F.S.B.</u>, 242 Mich. App. 538, 548 (2000).  The
burden of proving an enforceable agreement is even heavier when claiming against a
financial institution.  Specifically, M.C.L. § 566.132(2) provides, in relevant part, that an
action cannot be brought against a financial institution to enforce any "financial
accommodation," unless the promise or commitment "is in writing and signed with an
authorized signature by the financial institution."  In <u>Crown Technology</u>, the plaintiff sued
the bank to enforce an alleged unwritten promise by the bank to waive a prepayment
penalty provision in the plaintiff's mortgage loan.  The court of appeals held that section
132(2) barred the plaintiff's promissory estoppel claim, stating that section 32(2) "plainly
states that a party is precluded from bringing a claim--no matter its label--against a
financial institution to enforce the terms of an oral promise to waive a loan provision."
<u>Id</u>. at 550.  In reaching its conclusion, the court of appeals noted that its ruling extended
beyond promissory estoppel claims, and that §132(2) barred all unwritten promises,
regardless how such claims were labeled, explaining:

> However, as we noted above, the Legislature used the broadest possible
> language in M.C.L. § 566.132(2); M.S.A. 26.922(2) to protect financial institutions
> by not specifying the types of "actions" it prohibits, eliminating the possibility of
> creative pleading to avoid the ban.

14

Id. at 551.

Here, M.C.L. 566.132(2) bars plaintiff's fraud claims because plaintiff has not alleged the existence of any documentary evidence signed by an authorized representative of Wells Fargo indicating that he would receive a financial accommodation in the form of a loan modification.  Because plaintiff's fraud claims would require this Court to enforce alleged oral promises and representations in contravention of the statute of frauds, Counts 8 and 9 fail to state plausible claims.

### I.  Count 10 - Promissory Estoppel

For the same reason discussed above, plaintiff's promissory estoppel claim must be dismissed based on the statute of frauds.

### J.  Count 11 - Michigan Consumer Protection Act

In Count 11, plaintiff alleges that Wells Fargo violated the Michigan Consumer Protection Act (MCPA), M.C.L. § 445.901 et seq.  Wells Fargo says this claim must be dismissed because the MCPA does not apply to mortgage transactions.  The Court agrees.  Under the MCPA, "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States" is exempt from the MCPA.  M.C.L. § 445.904(1)(a); see also Newton v .Bank West, 262 Mich. App. 434, 442, 491 (2004).  In Newton, the court of appeals stated:

> [W]hen the Legislature said that transactions or conduct "specifically authorized" by law are exempt from the MCPA, it intended to include conduct the legality of which is in dispute . . . we conclude that the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is "specifically authorized." Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct is prohibited.

15

Id. at 438 (quoting Smith v. Globe Life Ins. Co., 460 Mich. 446, 465 (1999))

(modifications & emphasis in original).

As explained above, Wells Fargo is a national banking association that is

chartered and governed by the National Bank Act, 12 U.S.C. § 371(a), which

authorizes national banking associations to "make, arrange, purchase or sell loans or

extensions of credit secured by liens on interests in real estate."  Courts have

consistently applied the MCPA exemption to the mortgage business of regulated lending

institutions.  See Newton, 262 Mich. App. at 438 ("[W]e conclude that the residential

mortgage loan transactions fit squarely within the exemption."); Hanning v.

Homecomings Fin. Networks, Inc., 436 F. Supp. 2d 865, 869 (W.D. Mich. 2006) (holding

defendants are "licensed mortgage lenders. Thus, they are specifically authorized by

law to have engaged in the 'general transaction' now at issue.  The subject transactions

are therefore exempt under the MCPA.") (emphasis in original) (internal citations

omitted); Dyer v. Flagstar Bank FSB, 2005 WL 177215 (Mich. App. Jan. 27, 2005)

(finding that residential mortgage transactions are exempt from the MCPA); Berry v.

Bank of America, N.A., 2009 WL 4950463 (E.D. Mich. Dec. 16, 2009) ("the MCPA does

not apply to residential loan transactions.").  Because Wells Fargo's business as a

mortgage lender and servicer is subject to oversight by the OCC, the MCPA does not

apply to it.  Thus, plaintiff's claim under the MCPA fails to state a claim.

### K.  Count 12 - Unjust Enrichment

Count 12 alleges unjust enrichment.  As Wells Fargo correctly notes, this claim

must be dismissed because a claim of unjust enrichment cannot proceed where there is

an express contract covering the subject matter; they are only applicable where a

16

contract is implied. <u>Fodale v. Waste Management of Michigan, Inc.</u>, 271 Mich. App. 11, 36 (2006). Here, the case is governed by express written agreements, including the mortgage and note. Thus, Count 12 fails to state a viable claim.

L. Claims based on HAMP violations

Additionally, to the extent that plaintiff's claims under Counts 2, 3, 5, 8, 9, and 11 allege that he was denied a loan modification in violation of section 1403 of the Housing and Economic Recovery Act (HERA) and the Federal Home Affordable Modification Program (HAMP), they fail as a matter of law.

First, the statutes do not compel Wells Fargo to modify a loan. HERA requires the Secretary of the Treasury "to encourage the servicers of the underlying mortgages, considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program." 12 U.S.C. § 5219. While under the statute "the Secretary must encourage mortgage servicers to modify loans, the statute does not require Defendant or other mortgage servicers to modify loans." <u>Hart v. Countrywide Home Loans, Inc.</u>, 735 F. Supp. 2d 741, 747-48 (E.D. Mich. 2010) (dismissing claims under HERA and HAMP); <u>Escobedo v. Countrywide Home Loans, Inc.</u>, No. 09cv1557 BTM (BLM), 2009 WL 4981618, at *3 (S.D. Cal. Dec. 15, 2009) ("The Agreement does not state that Countrywide must modify all mortgages that meet the eligibility requirements."); <u>Williams v. Geithner</u>, No. 09-1959 ADM/JJG, 2009 WL 3757380, at *6 (D. Minn. Nov. 9, 2009) (concluding that loans may be modified where appropriate and with discretion). Thus, even if the Rays were entitled to a modification, there would be no duty imposed on HLS for which they could seek relief.

Second, even assuming plaintiff was eligible for a modification and assuming the

17

statutes impose a duty on Wells Fargo to modify the mortgage, the statutes "do not create a private right of action under which Plaintiff may seek relief." Hart, supra. See also Aleem v. Bank of America, No. EDCV 09-01812-VAP (RZx), 2010 WL 532330, *4, 2010 U.S. Dist. LEXIS 11944, *12 (C.D. Cal. Feb. 9, 2010) ("There is no express or implied right to sue fund recipients ... under TARP or HAMP.); Zendejas v. GMAC Wholesale Mortgage Corp., No. 1:10-CV-00184 OWW GSA, 2010 WL 2490975 (E.D. Cal. June 16, 2010) (concluding that third-party beneficiaries cannot enforce government contracts "absent a clear intent to the contrary," and that HAMP expresses no such intent).  Accordingly, any claims based on violations of HERA and HAMP must be dismissed.

V.  Conclusion

For the reasons stated above, plaintiff has not stated a plausible claim for relief or created a genuine issue of material fact as to any of his claims against Wells Fargo relating to defects in his mortgage and foreclosure proceedings.  Accordingly, Wells Fargo's motion to dismiss or for summary judgment is GRANTED.  This case is DISMISSED.

SO ORDERED.


Dated: January 13, 2012                    _S/Avern Cohn_____
                                           AVERN COHN
                                           UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 13, 2012, by electronic and/or ordinary mail.

                                           _S/Julie Owens_____
                                           Case Manager, (313) 234-5160